**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO. 5:25-CR-48-MTT-CHW** |
| | : | |
| **LONNIE ALEXANDER,** | : | |
| | : | |
| **Defendant.** | : | |

## PLEA AGREEMENT

The United States Attorney for the Middle District of Georgia ("United States") and

Defendant Lonnie Alexander enter into this plea agreement, agreeing as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Indictment

against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained

to Defendant their understanding of the United States' evidence.

(2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant

has the right to plead not guilty and to elect instead to be tried by a jury. Defendant understands

that at a jury trial Defendant would enjoy a presumption of innocence, and that the United States

would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant

understands that Defendant would be entitled to the services of an attorney at all stages of such a

trial. Defendant understands that Defendant would be entitled to confront and to cross-examine

the United States' witnesses, and to present witnesses and evidence in Defendant's own behalf.

Defendant understands that Defendant would have the right to testify in Defendant's own behalf,

1



but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

(3)

Being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, Defendant agrees pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), as follows:

(A)    Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count Eighteen of the Indictment which charges Defendant with Distribution of Fifty Grams or More of Methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

(B)    Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to the following penalties on Count Eighteen:

- a maximum sentence of life imprisonment and a mandatory minimum sentence of ten years imprisonment;

- a maximum fine of $10,000,000.00, or both; and

- a minimum term of supervised release of five years.

Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

(C)    Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the United States, or the Probation Office. Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea on the ground that Defendant

2



received an estimated guideline range from the United States, Defendant's attorney, or the Probation Office which is different from the guideline range computed by the Probation Office in the Presentence Investigation Report or different from the guideline range found by the Court to be the correct guideline range.

(D)    Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigation Report has been completed. Defendant understands and has discussed with Defendant's attorney that Defendant will have the opportunity to review the Presentence Investigation Report and to object to and challenge any facts reported therein. Defendant understands and has discussed with Defendant's attorney that any objections or challenges by Defendant or Defendant's attorney to the facts or recommendations presented in the Presentence Investigation Report or any disagreement with the Court's rulings on such objections or challenges will not be grounds for withdrawing the plea of guilty. Nothing in this agreement precludes the United States from providing full and accurate information to the Court and the Probation Office for use in calculating the advisory guideline range applicable to Defendant.

(E)    Defendant understands and has discussed with Defendant's attorney that after the Court determines the advisory guideline range applicable to Defendant, the Court has the discretion and authority to impose a sentence that is more severe or less severe than the sentence recommended by the guidelines.

(F)    Although 18 U.S.C. § 3742 authorizes defendants to appeal their sentences under certain circumstances, Defendant knowingly and voluntarily waives any right to appeal Defendant's sentence, including the amount of any restitution imposed as part of Defendant's sentence. Defendant's sentence appeal waiver does not apply if: (1) the Court imposes a sentence

3



that exceeds the advisory guideline range as that range has been calculated by the Court at the time of sentencing; (2) the Court imposes a sentence that exceeds the statutory maximum; or (3) the United States appeals Defendant's sentence under the authority of 18 U.S.C. § 3742(b). Nothing in this agreement shall deprive the United States of its right to appeal Defendant's sentence, as authorized by 18 U.S.C. § 3742(b). If, however, the United States appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

Defendant waives any right to collaterally attack Defendant's conviction and sentence under 28 U.S.C. § 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by 28 U.S.C. § 2241.

Defendant understands and acknowledges that the waivers outlined herein may result in the dismissal of any appeal or collateral attack Defendant might file challenging Defendant's conviction or sentence. If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the United States, be remanded to the Court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

(G)    Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding Defendant's involvement and the involvement of all others involved in the charges alleged in the present Indictment as well as any and all criminal violations about which Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. Defendant understands that this

4

agreement does not require Defendant to implicate any particular individual or individuals or to "make a case." Rather, this agreement requires Defendant to be truthful and to testify truthfully whenever called upon.

(H)    Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules by entering into this plea agreement.  If, after entering into this plea agreement, Defendant fails to plead guilty, or the plea of guilty is later withdrawn, Defendant's statements in connection with this plea, including the stipulation of fact set forth below in paragraph (8), and any leads derived therefrom, shall be admissible for any and all purposes.

(I)    Defendant further agrees that all evidence, except biological evidence as defined in 18 U.S.C. § 3600A, if any, obtained in this investigation and prosecution may be destroyed or returned to its rightful owner 30 days after entry of the judgment or thereafter.

(J)    The United States and Defendant hereby agree that any breach of this agreement by Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the Indictment, would: (a) not relieve Defendant of Defendant's plea of guilty; (b) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Indictment; (c) permit the United States to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the United States to utilize against Defendant in any subsequent judicial proceeding any and all statements made by Defendant. If a legitimate issue arises as to whether or

5



not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States agrees as follows:

(A)    The United States will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought against Defendant solely in this district. The United States agrees to dismiss all remaining counts of the pending Indictment in exchange for Defendant's plea of guilty to Count Eighteen of the Indictment.

(B)    If Defendant cooperates truthfully and completely with the United States, including being debriefed and providing truthful testimony at any proceeding resulting from or related to Defendant's cooperation, then the United States will make the extent of Defendant's cooperation known to the sentencing court. If Defendant is not completely truthful and candid in Defendant's cooperation with the United States, Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If Defendant's cooperation is completed before sentencing, the United States will consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e) and/or U.S.S.G. § 5K1.1 and warrants the filing of a motion at the time of sentencing recommending a downward departure from the



applicable guideline range. If Defendant's cooperation is completed after sentencing, the United States will consider whether such cooperation qualifies as "substantial assistance" pursuant to Federal Rule of Criminal Procedure 35(b) and warrants the filing of a motion for reduction of sentence. In either case, Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the United States. Any good faith efforts on the part of Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35(b) motion. In addition, should Defendant fail to cooperate truthfully and completely with the United States, or if Defendant engages in any additional criminal conduct, Defendant shall not be entitled to consideration pursuant to this paragraph.

(C)     Pursuant to U.S.S.G. § 1B1.8, the United States agrees that any self-incriminating information which was previously unknown to the United States and is provided to the United States by Defendant in connection with Defendant's cooperation and as a result of Defendant's plea agreement to cooperate will not be used in determining the applicable guideline range. Further, the United States agrees not to bring additional charges against Defendant, with the exception of charges resulting from or related to a violent felony, as defined in 18 U.S.C. § 924(e)(2)(B), based on any information provided by Defendant in connection with Defendant's cooperation, which information was not known to the United States prior to said cooperation. This does not restrict the United States' use of information previously known or independently obtained for such purposes.

(D)     The United States agrees that it will file a motion requesting that Defendant's offense level be reduced by one level under U.S.S.G. § 3E1.1(b) for timely notifying the United States of Defendant's intention to enter a guilty plea, but Defendant understands that whether

7



Defendant is entitled to any offense-level reduction under U.S.S.G. § 3E1.1 is entirely within the Court's discretion. The United States reserves the right to furnish the Court with full and accurate information and/or argue against the two-level reduction for acceptance of responsibility if Defendant engages or has engaged in conduct inconsistent with accepting responsibility, as defined in U.S.S.G. § 3E1.1 and its commentary.

(5)

Nothing herein limits the sentencing discretion of the Court. The United States and Defendant understand and agree that the Court should consider its sentence in light of the advisory United States Sentencing Guidelines. Defendant therefore agrees that at sentencing the Court may determine any fact pertinent to Defendant's sentence by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to the sentence to be imposed by the Court.

(6)

This agreement constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In particular, Defendant acknowledges and agrees that no one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range in order to induce this plea. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

8



Defendant understands that this agreement binds only the Office of the United States Attorney for the Middle District of Georgia, and that the agreement does not bind any other component of the United States Department of Justice, nor does it bind any state or local prosecuting authority, unless expressly stated herein.

(7)

As an aid to this Court, the United States and Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. § 6B1.4(d) (Policy Statement), this Court may accept this stipulation as written. The facts set forth below are intended to allow the Court to satisfy it obligation under Federal Rule of Criminal Procedure 11(b)(3)to ensure that an adequate factual basis to support the plea exists. In determining an appropriate guideline range or ultimate sentence, the Court, in its discretion, and consistent with its obligation to determine the facts relevant to sentencing, may consider other information in addition to the facts set forth here.

Subject to the above paragraph, the United States and Defendant stipulate and agree that Defendant is in fact guilty of the offense to which Defendant is pleading guilty, that the following facts are true and correct, and that the United States at trial could prove the following facts beyond a reasonable doubt:

Between April 2024 and April 2025, Defendant committed a series of illegal firearms and narcotics transactions. The investigation began on March 25, 2024, when a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Confidential Informant ("CI") shared with the ATF that he knew Defendant, a convicted felon, to illegally possess and sell firearms and narcotics.

9



On March 28, 2024, the ATF recorded a phone call between the CI, an ATF Undercover Agent ("UC"), and Defendant. During the call, Defendant said he would sell one ounce of methamphetamine and half of an ounce of cocaine to the CI and UC for $550. On April 1, 2024, the ATF provided the CI with $600 in ATF funds and audio/visual ("A/V") recording devices. After the CI arrived at a gas station in Macon, Georgia, the CI purchased suspected cocaine for $500 from Defendant. The suspected cocaine was sent to a lab and tested positive for 13.1 grams of cocaine with 82% purity.

On April 18, 2024, the ATF provided the CI with $1,400 in ATF funds and A/V recording devices. The CI called Defendant to let him know he was on his way to purchase cocaine and a firearm from Defendant. Once the CI arrived at a fast-food restaurant in Macon, Georgia, Defendant entered the CI's car and sold him suspected cocaine for $700. The suspected cocaine was sent to a lab and tested positive for 27.6 grams of cocaine with 88% purity and 2.23 grams of cocaine base ("crack cocaine") with 92% purity.

On April 23, 2024, the ATF provided the CI with $1,700 in ATF funds and A/V recording devices. The CI called Defendant to let him know he was on his way to purchase a firearm from Defendant. Once the CI arrived at Defendant's residence in Macon, Georgia, Defendant entered the CI's car and traveled to a nearby pawn shop. Defendant planned to purchase four firearms for the CI. Upon arrival at the pawn shop, the CI advised Defendant the CI could not purchase firearms because the CI was a convicted felon. The CI and Defendant left the pawn shop without purchasing firearms. The CI then asked Defendant if he could purchase one ounce of cocaine. Defendant called an unknown person and asked him to bring cocaine to Towne Place Suites on Mercer University Drive in Macon, Georgia, which is less than 1,000 feet from the Mercer University campus. A gray vehicle, driven by Kyle Orlando O'Shea Samuels Rumph, soon arrived at Towne Place Suites.

10

Defendant obtained an ounce of suspected cocaine from Rumph and returned it to the CI. The CI gave Defendant $1,050 for the suspected cocaine. Defendant then left in the gray vehicle. The suspected cocaine was sent to a lab and tested positive for 27.5 grams of cocaine with 89% purity.

On May 22, 2024, the ATF provided the CI with $1,500 in ATF funds and A/V recording equipment. The CI called Defendant to let him know that he was on his way to purchase a firearm. Once the CI arrived at Defendant's residence in Macon, Georgia, Defendant entered the CI's car and began discussing narcotics and firearms. A gray vehicle, driven by Alfred Thompson, arrived. Defendant then retrieved a Hi-Point, Model CO, 9mm luger pistol, Serial Number P10000477, with a Remington magazine containing three rounds of ammunition, from Thompson. Defendant gave the Hi-Point firearm to the CI in exchange for $340, knowing that Defendant was a convicted felon, the CI was a convicted felon, and the CI would use the Hi-Point firearm during narcotics sales. Thompson then approached Defendant and the CI to discuss additional sales of firearms. The Hi-Point firearm was later determined to have traveled in interstate commerce before May 22, 2024.

On May 23, 2024, the ATF provided the CI with $1,500 in ATF funds and A/V recording equipment. Once the CI arrived at Defendant's residence in Macon, Georgia, Defendant entered the CI's car. At Defendant's request, the CI drove to a gas station in Macon, Georgia. A black vehicle, driven by Kevin Daniels, arrived. Defendant retrieved a Smith & Wesson, Model SW9VE Caliber 9 pistol, Serial Number DVJ0748, loaded with seven rounds of ammunition, from Daniels and gave it to the CI, knowing that Defendant and the CI were convicted felons and that the CI would use the firearm during narcotics sales, in exchange for $300. The firearm was later determined to have traveled in interstate commerce before May 23, 2024. The CI then gave

11



Defendant $100 for a "finder's fee." Daniels then approached the CI and discussed additional firearms sales, including the Glock firearm located in his waistband.

On September 12, 2024, the ATF provided the CI with $1,400 in ATF funds and A/V recording equipment. The CI called Defendant to let him know that he was on his way to purchase firearms from Defendant. Once the CI and Defendant arrived at a gas station in Macon, Georgia, Defendant entered the CI's vehicle. Defendant handed a Smith & Wesson, Model SW9VE, Caliber 9 pistol, Serial Number FCH8944, to the CI, in exchange for $350, knowing that Defendant and the CI were convicted felons and that the CI would use the firearm during narcotics sales. The firearm was later determined to have traveled in interstate commerce before September 12, 2024.

Later that day, the ATF provided the CI with $3,000 in ATF funds and A/V recording equipment. The CI called Defendant let him know that he was on his way to purchase firearms. Once the CI and Defendant arrived at a gas station in Macon, Georgia, they traveled to an apartment complex in Macon. Defendant gave the CI a Titan Tiger, .38 Special Revolver, Serial Number unknown, and suspected methamphetamine in exchange for $400. Defendant gave the firearm to the CI knowing that Defendant and the CI were convicted felons, the CI would use the firearm during narcotics sales, and the firearm had no serial number. The firearm was later determined to have traveled in interstate commerce before September 12, 2024. The suspected methamphetamine was sent to a lab where it tested positive for 15.21 grams of methamphetamine with 99% purity.

On April 23, 2025, the ATF provided the CI with $3,000 in ATF funds and A/V recording equipment. The CI called Defendant to let him know he was on his way to purchase firearms and methamphetamine. When the CI arrived at a restaurant in Macon, Georgia, Defendant exited a black vehicle driven by Rumph. The CI then bought suspected methamphetamine from Defendant

12



for $600. Defendant then took the CI to another vehicle in the restaurant parking lot. The CI and Defendant entered the vehicle, and Defendant introduced the CI to the vehicle's occupant, John Cato. Cato sold three firearms, including a Glock pistol with a switch, for $1,850 to the CI. The suspected methamphetamine was sent to a lab where it tested positive for 83.73 grams of methamphetamine, which is a Schedule II controlled substance, with 99% purity.

Prior to the dates listed above, Defendant knew he had been convicted of felony forgery in the Superior Court of Lowndes County, Georgia, in 2008, Case No. 2008CR362.

Defendant now admits that on April 23, 2025, Defendant distributed fifty grams or more of methamphetamine, a Schedule II controlled substance, in the Macon Division of the Middle District of Georgia, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)(viii), as alleged in Count Eighteen of the Indictment, and all elements of that count have been proven beyond a reasonable doubt.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by Defendant.

SO AGREED, this ___21___ day of ___April___, ___2026___

WILLIAM R. KEYES
UNITED STATES ATTORNEY

BY: _____
HANNAH M. COUCH
ASSISTANT UNITED STATES ATTORNEY

13

I, Lonnie Alexander, have read this agreement and had this agreement read to me by my attorney, William Noland. I have discussed this agreement with my attorney and I fully understand it and agree to its terms. Defendant acknowledges that Defendant authorized and consented to the negotiations between the United States and the attorney for Defendant that led to this agreement.

_____
LONNIE ALEXANDER
DEFENDANT

I, William Noland, attorney for Defendant Lonnie Alexander, have explained the Indictment and the United States' evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____
WILLIAM NOLAND
ATTORNEY FOR DEFENDANT

14